**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alpine 4 Holdings Incorporated, et al., | No. CV-21-01494-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Finn Management GP LLC, et al., | |
| Defendants. | |

Before the Court are Defendants Finn Management GP LLC and Fin Capital Management LLC's Motion to Dismiss (Doc. 35) and Plaintiffs' Second Motion to Conduct Jurisdictional Discovery (Doc. 37). The Motions have been fully briefed, and the Court now rules as follows.

**I.    BACKGROUND**

Alpine 4 Holdings, Inc. ("Alpine 4") is a Delaware corporation headquartered and doing business in Arizona. (Doc. 1 ¶ 1). It is a holding company for several subsidiary businesses and is a publicly traded corporation. (Doc. 1 ¶¶ 15, 16). On August 31, 2021, Alpine 4 and four of its shareholders (collectively "Plaintiffs") filed a Complaint alleging securities fraud, tortious interference with prospective business expectancy, and defamation against Defendants Finn Management GP LLC and Fin Capital Management LLC (collectively the "Finn Defendants") and Defendant Grizzly Research, LLC ("Grizzly"). (Doc. 1). Plaintiffs allege that each Defendant made false statements about Alpine 4 and "either invested in, motivated other investors to invest in, and/or set off an

intentional frenzy of short selling Alpine 4 stock to put downward pressure on the market price."[1] (Doc. 1 ¶ 69). The Finn Defendants have no apparent direct relationship to Grizzly, and the facts underlying Plaintiffs' claims against the parties are distinct. This Order therefore focuses only on the allegations against the Finn Defendants.

The Finn Defendants are both Delaware limited liability companies. (Doc. 1 ¶¶ 6, 7; Doc. 35-1 ¶ 4). Plaintiffs allege that the Finn Defendants conduct business collectively as "Fin Capital." (Doc. 1 ¶ 8). Plaintiffs allege that the Finn Defendants posted a variety of false or misleading statement about Alpine 4 on Twitter to encourage readers to short sell its stock, driving down Alpine 4's stock value. (Doc. 1 ¶¶ 26–35, 64).

On January 24, 2022, the Finn Defendants filed their Motion to Dismiss, arguing that the claims against them should be dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. (Doc. 35). On February 23, 2022, Plaintiffs filed a Motion to Conduct Jurisdictional Discovery, requesting limited discovery on the personal jurisdiction issue. (Doc. 37). The issues raised in the Motions will be addressed in turn.

## II.   SUBJECT MATTER JURISDICTION

### a. Legal Standard

Federal Rule of Civil Procedure ("FRCP") 12(b)(1) "allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction." *Kinlichee v. United States*, 929 F. Supp. 2d 951, 954 (D. Ariz. 2013) (internal quotation marks omitted). "A motion to dismiss for lack of subject matter jurisdiction under FRCP 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006); *see also Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). "When the motion to dismiss

---

[1] "Short selling" is a strategy "in which the investor sells stock that the investor does not own, speculating that the stock price will fall, so that when the investor has to make good on the stock that the investor never owned, it can be purchased at a lower price if the stock price goes down." (Doc. 1 ¶ 37).

attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Renteria*, 452 F. Supp. 2d at 919. "When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact." *Id*. "A plaintiff has the burden of proving that jurisdiction does in fact exist." *Id*.

### b. Discussion

The only asserted basis for subject matter jurisdiction is federal question jurisdiction.[2] The Finn Defendants argue that the Court lacks subject matter jurisdiction because §§ 9(d) and 10(a) of the Securities Exchange Act of 1934 (the "Act") do not create a private right of action; because Plaintiffs have not pled a cognizable securities fraud claim under § 10(b) of the Act or under Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. 240.10b-5; and because absent the securities fraud claim under federal law, the Court cannot exercise jurisdiction over the remaining state-law claims.

#### i. Section 9(d)

A claim must be dismissed for lack of subject matter jurisdiction if the statute on which it is based does not create a private right of action. *See In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1229 (9th Cir. 2008). Here, Plaintiffs' securities fraud claim first cites to § 9(d) of the Act:

> It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national

---

[2] The Finn Defendants state that diversity jurisdiction cannot exist because the dispute is between Delaware citizens. (Doc. 35 at 7). This is not necessarily the case because LLCs take the citizenship of their members. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Still, the Complaint does not affirmatively allege the citizenship of Defendants' members, so the Court cannot find that diversity jurisdiction exists. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

> securities exchange, or for any member of a national securities exchange to effect, alone or with one or more other persons, a manipulative short sale of any security. The Commission shall issue such other rules as are necessary or appropriate to ensure that the appropriate enforcement options and remedies are available for violations of this subsection in the public interest or for the protection of investors.

15 U.S.C. § 78i(d). No Court has previously considered whether § 9(d) creates a private right of action. Notably, § 9(f) expressly creates a private right of action for those injured by a violation of § 9(a), (b), or (c)—but not for those injured by a violation of § 9(d). *See* 15 U.S.C. § 78i(f).

Plaintiffs make two arguments in favor of a private right of action, neither of which are convincing. First, Plaintiffs argue that § 27(a) of the Act—which provides that district courts have exclusive jurisdiction in actions "brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder"—shows that the Court has subject jurisdiction. 15 U.S.C. § 78aa(a). But as the text of the statute makes clear, § 27(a) does not create a private right of action for every provision of the Act; it merely gives the district courts exclusive jurisdiction in the enforcement of any private rights of action arising from those provisions. In other words, if a provision of the Act does not create a private right of action, § 27(a) cannot confer jurisdiction. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979) ("[Section 27] creates no cause of action of its own force and effect . . . ."). Second, Plaintiffs argue that § 21(d)(9)—which states that the SEC's authority to seek disgorgement does not "alter[ ] any right that any private party may have to maintain a suit for a violation of this Act"—clarifies that there is a private right of action under § 9(d). 15 U.S.C. § 78u(d)(9). Again, not so. That provision does not create any private rights of actions; it merely clarifies that it does not alter any rights created by other sections of the Act.

Finding no express cause of action, the Court must determine whether § 9(d) implies a private right of action—that is, "whether Congress intended to create such a right of action without explicitly saying so." *Scientex Corp. v. Kay*, 689 F.2d 879, 881

(9th Cir. 1982). Courts consider four factors in this inquiry:

> (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether an implied private cause of action for the plaintiff is "consistent with the underlying purposes of the legislative scheme"; and (4) whether the cause of action is "one traditionally relegated to state law so that it would be inappropriate to infer a cause of action based solely on federal law."

*Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1170 (9th Cir. 2013) (quoting *Cort v. Ash*, 422 U.S. 66, 78 (1975)). Congressional intent is the "supreme factor," which the other three factors may be used to decipher. *Id.* at 1171; *see Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952, 958 (9th Cir. 2021).

The fact that § 9(f) expressly creates a private right of action for violations of § 9(a)–(c) but not for § 9(d) makes it clear that Congress did not intend to provide a private right of action for violations of § 9(d). 15 U.S.C. § 78i(f); *see Scientex Corp.*, 689 F.2d at 882–83 ("The fact that the [Act] expressly provides for enforcement in section 16(b) convinces us that congressional intent to provide a private right of action under section 16(a) should not be inferred from the statutory language."). Congress could very easily have added subsection (d) to the list of subsections for which there is a private right of action, but it chose not to do so. *See Touche Ross & Co.*, 442 U.S. at 572. The only reasonable conclusion is that Congress had no intention to allow for private enforcement of § 9(d).

Other considerations further support this conclusion. Rather than using rights-creating language that might suggest the statute was enacted for the benefit of certain plaintiffs, § 9(d) uses prohibitory language. *See Lil' Man in the Boat, Inc.*, 5 F.4th at 959–60. There is no long-standing history of recognizing a cause of action under § 9(d), as no court has ever done so. *See Touche Ross & Co.*, 442 U.S. at 577 n.19. And in the time since the Supreme Court last recognized an implied private right of action in the Securities Exchange Act, it has "adhered to a stricter standard of the implication of

5

private causes of action." *Id.* at 578. Accordingly, the Court finds that Plaintiffs cannot bring a claim under § 9(d) of the Act, so it does not give rise to subject matter jurisdiction.

### ii. Section 10(a)

Plaintiffs' securities fraud claim also cites to § 10(a) of the Act, 15 U.S.C. § 78j(a). Two district courts have considered whether this provision creates a private right of action, and for reasons similar to those articulated by this Court with respect to § 9(d), both concluded that it does not. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, No. 92 CIV. 6879(CSH), 1997 WL 299430 (S.D.N.Y. June 4, 1997); *Hemispherx Biopharma, Inc. v. Asensio*, No. CIV. A. 98-5204, 1999 WL 144109, at *5–8 (E.D. Pa. Mar. 15, 1999). The Court agrees with the reasoning of *Advanced Magnetics* and *Hemispherx Biopharma* in full and concludes that Plaintiffs cannot bring a claim under § 10(a).

### iii. Section 10(b) and Rule 10b-5

Perhaps the reason that so few courts have considered whether a private right of action exists under §§ 9(d) and 10(a) is that a claim involving manipulative short sales can be brought pursuant to § 10(b) of the Act and SEC Rule 10b-5. *See, e.g.*, *Sharette v. Credit Suisse Int'l*, No. C 13-2783 SBA, 2014 WL 5282143, at *1–2 (N.D. Cal. Oct. 15, 2014); *Hudson Bay Master Fund Ltd. v. Patriot Nat'l*, 309 F. Supp. 3d 100, 115–17 (S.D.N.Y. 2018). It is well established that there is a private right of action under those provisions. *See Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12–13 (1971).

Still, the Finn Defendants argue that Plaintiffs have failed to satisfy the pleading requirements for a § 10(b) securities fraud claim such that the Court lacks subject matter jurisdiction. Rather than making a substantive argument to this effect in their Motion, the Finn Defendants "incorporate by reference" Grizzly's contentions in its Motion to Dismiss as to why Plaintiffs have failed to state a claim for securities fraud. (Doc. 35 at 5). Defendants cannot simply shoehorn a motion to dismiss for failure to state a claim

into a motion to dismiss for lack of subject matter jurisdiction. Rather, a federal question is jurisdictionally insubstantial only "if it is patently without merit, or so insubstantial, improbable, or foreclosed by Supreme Court precedent as not to involve a federal controversy." *Demarest v. United States*, 718 F.2d 964, 966 (9th Cir. 1983). If the federal claim is not "wholly insubstantial and frivolous," then the Court has jurisdiction to consider the case on the merits. *See City of Las Vegas v. Clark Cnty.*, 755 F.2d 697, 701 (9th Cir. 1984). The Court cannot conclude that Plaintiffs' securities fraud claim against the Finn Defendants is wholly insubstantial or frivolous, so the Court assumes federal question jurisdiction. Plaintiffs' state-law claims are based on the same nucleus of operative facts as the federal claim, so the Court will exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(a). In sum, the claims against the Finn Defendants will not be dismissed for lack of subject matter jurisdiction.

### III.  PERSONAL JURISDICTION

#### a. Legal Standard

When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion is based on written materials rather than an evidentiary hearing, as here, the Court must determine "whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (internal quotation marks omitted). Plaintiffs "cannot simply rest on the bare allegations of [their] complaint," but "uncontroverted allegations in the complaint must be taken as true." *Id.* (internal quotation marks and citation omitted).

#### b. Discussion

The Finn Defendants argue that this Court lacks personal jurisdiction over them because they lack sufficient contacts with Arizona. This argument is off base as it relies on the wrong law. The first step in a personal jurisdiction analysis is to determine whether an applicable rule or statute confers jurisdiction over the defendants. *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1313–14 (9th Cir. 1985). Both parties' briefing of

the personal jurisdiction issue erroneously looks to Arizona's long-arm statute and therefore analyzes personal jurisdiction under the principles of *International Shoe Company v. Washington*, 326 U.S. 310 (1945), and its progeny. To the contrary, personal jurisdiction in this case is derived from § 27 of the Act, which authorizes nationwide service of process. *See* 15 U.S.C. § 78aa; *Sec. Inv. Prot. Corp.*, 764 F.2d at 1314–15. "A federal court obtains personal jurisdiction over a defendant if it is able to serve process on him." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004).

In a federal question case where Congress has provided for nationwide service of process, the *International Shoe* "minimum contacts" analysis does not apply because the due process considerations are different from those in in a diversity case. *See Sec. Inv. Prot. Corp.*, 764 F.2d at 1315. Instead, "where a federal statute . . . confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Id.* at 1315 (internal quotation marks omitted). Accordingly, "so long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316; *see also Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1127–28 (D. Ariz. 2006), *aff'd*, 569 F.3d 1015 (9th Cir. 2009).

Applying the correct law, then, it is obvious that this Court has personal jurisdiction over the Finn Defendants with respect to the securities fraud claim. They are Delaware LLCs conducting business exclusively in New York. (Doc. 35-1 ¶ 4). That clearly constitutes minimum contacts with the United States such that due process is not offended. *See Action Embroidery Corp.*, 368 F.3d at 1180. Further, "[i]f personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same common nucleus of operative facts as the claim for which jurisdiction exists." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal quotation marks omitted). Under that doctrine, the Court will also exercise personal jurisdiction over the state-law claims against the

Finn Defendants. Plaintiffs' Second Motion to Conduct Jurisdictional Discovery (Doc. 37) will therefore be denied as moot.

**IV.   VENUE**

   **a. Legal Standard**

Under FRCP 12(b)(3), a party may move for dismissal of an action that has been brought in an improper venue. If venue is improper, the Court must either dismiss the case or, "if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Once a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When considering a motion to dismiss pursuant to Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside of the pleadings. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). The Court must draw all reasonable inferences and resolve all factual conflicts in favor of Plaintiffs. *See id.* at 1138.

   **b. Discussion**

The Finn Defendants argue that venue in this District is improper under 28 U.S.C. § 1391(b). (Doc. 35 at 16). That statute provides that venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction . . . .

28 U.S.C. § 1391(b). Entity defendants, such as LLCs, are deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Thus, because all

Defendants are LLCs, and because this Court has personal jurisdiction over all of them under § 27 of the Act, they are all deemed to reside in this District. Thus, under 28 U.S.C. § 1391(b)(1), venue is proper.

To be sure, some courts have held that where a federal statute contains both a nationwide service provision and a narrower venue provision, the nationwide service provision cannot be used in combination with § 1391's general venue provision. *See KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 726–28 (7th Cir. 2013) (discussing a circuit split with respect to the interpretation of the Clayton Act's jurisdiction and venue provisions). The Ninth Circuit, however, has held otherwise. In *Go-Video, Inc. v. Akai Electronic Co., Ltd.*, the Ninth Circuit considered whether venue could be had under § 1391 in a case where personal jurisdiction was had under § 12 of the Clayton Act, which provides for nationwide service.[3] 885 F.2d 1406 (9th Cir. 1989). After a lengthy analysis of the statutory text, history, and interpretation, the Ninth Circuit determined that, absent any indication that the Clayton Act's venue provision was intended to be exclusive, other federal venue statutes still applied. *Id.* at 1410. Finding no indication of exclusivity, and even recognizing that its holding might make the venue provision of § 12 of the Clayton Act "wholly redundant," the Court held that the plaintiff could take advantage of both nationwide process under the Clayton Act *and* § 1391's broader venue provision. *Id.* at 1413.

The holding in *Go-Video* applies squarely to § 27 of the Act in this case. In fact, the Ninth Circuit stated that § 27 of the Securities Exchange Act is "modeled after" § 12 of the Clayton Act and that the two statutes "are nearly identical," making analogies between them "peculiarly apt." *Id.* at 1414. There is no indication in § 27 that the venue provision is intended to be exclusive as opposed to supplementing the general venue statute. *See id.* at 1409 ("[A]s a general matter, courts have interpreted special venue provisions to supplement, rather than preempt, general venue statutes."). The result is

---

[3] Specifically, the § 1391 provision that the *Go-Video* plaintiff sought to apply allowed aliens to be sued in any district. *Go-Video, Inc.*, 885 F.2d at 1408.

unusual—effectively allowing for nationwide personal jurisdiction and venue when the defendants in securities fraud cases are American entities—but it is the result that necessarily follows from the text of § 27 of the Act, 28 U.S.C.§ 1391, and the *Go-Video* case. The Court therefore concludes that venue is proper in this case under § 1391(b)(1).

## V.  CONCLUSION

The Court finds that it has subject matter jurisdiction and personal jurisdiction over the claims against the Finn Defendants, and that venue is proper in this District. Accordingly,

**IT IS ORDERED** that Finn Management GP LLC and Fin Capital Management LLC Defendants' Motion to Dismiss (Doc. 35) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Motion to Conduct Jurisdictional Discovery (Doc. 37) is **denied as moot**.

**IT IS FURTHER ORDERED** that the Finn Defendants must respond to the Complaint in accordance with Rule 12 no later than **May 13, 2022**.

Dated this 21st day of April, 2022.

Honorable Steven P. Logan
United States District Judge