**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Alpine 4 Holdings Incorporated, et al.,   )
                                           )
                     Plaintiffs,   )
vs.                                       )
                                       )
Finn Management GP LLC, et al.,     )
                                       )
                    Defendants.   )
                                           )

No.  CV-21-01494-PHX-SPL

**ORDER**

Before the Court are Defendant Grizzly Research, LLC's Motion to Dismiss (Doc. 21) and Plaintiffs' Motion to Conduct Jurisdictional Discovery (Doc. 29). The Motions have been fully briefed, and the Court now rules as follows.[1]

**I.      BACKGROUND**

Alpine 4 Holdings, Inc. ("Alpine 4") is a Delaware corporation headquartered and doing business in Arizona. (Doc. 1 ¶ 1). It is a holding company for several subsidiary businesses and is a publicly traded corporation. (Doc. 1 ¶¶ 15, 16). On August 31, 2021, Alpine 4 and four of its shareholders (collectively "Plaintiffs") filed a Complaint alleging securities fraud, tortious interference with prospective business expectancy, and defamation against Defendants Finn Management GP LLC and Fin Capital Management LLC (collectively the "Finn Defendants") and Defendant Grizzly Research, LLC

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998).

("Grizzly"). (Doc. 1). Plaintiffs allege that each Defendant made false statements about Alpine 4 and "either invested in, motivated other investors to invest in, and/or set off an intentional frenzy of short selling Alpine 4 stock to put downward pressure on the market price."[2] (Doc. 1 ¶ 69). Grizzly has no apparent direct relationship to the Finn Defendants, and the facts underlying Plaintiffs' claims against the parties are distinct. This Order therefore focuses only on the allegations against Grizzly.

Grizzly is a Delaware limited liability company. (Doc. 1 ¶ 9). On March 10, 2021, Grizzly published a report and short video about Alpine 4 on its website, including a variety of statements that Alpine 4 alleges were false. (Doc. 1 ¶¶ 42–63). The allegedly false statements included, among others, that "1) Alpine 4 acquisition Impossible Aerospace was defunct when Alpine 4 bought it in 2020; 2) Alpine 4 acquisition, Vayu Inc. was a non-operating and non-innovating drone developer with almost no active business; and 3) Alpine 4 is an investment scam." (Doc. 1 ¶ 42).

After the report was published, social media users have published and republished the information shared by Defendants about Alpine 4. (Doc. 1 ¶ 67). Plaintiffs allege that the volume of short-selling transactions of Alpine 4 stock was "extraordinarily high" from March 1 to March 12, 2021, including 56.0791% on March 10 and 41.3791% on March 12. (Doc. 1 ¶ 68). Alpine 4's stock price fell "from a February 10, 2021 peak of $8.51 per share to $5.83 on March 2, 2021; $4.89 on March 3, 2021; $4.25 on March 4, 2021; $3.95 on March 5, 2021." (Doc. 1 ¶ 35).  The stock price hovered between $3 and $4 "for a few months," but when the Complaint was filed on August 31, 2021, it had been trading below $3 per share. (Doc. 1 ¶ 35).

On November 10, 2021, Grizzly filed its Motion to Dismiss, arguing that the claims against it should be dismissed for lack of personal jurisdiction and for failure to state a claim. (Doc. 21). On December 10, 2021, Plaintiffs filed a Motion to Conduct

---

[2] "Short selling" is a strategy "in which the investor sells stock that the investor does not own, speculating that the stock price will fall, so that when the investor has to make good on the stock that the investor never owned, it can be purchased at a lower price if the stock price goes down." (Doc. 1 ¶ 37).

Jurisdictional Discovery, requesting limited discovery on the personal jurisdiction issue. (Doc. 29). The issues raised in the Motions will be addressed in turn.

## II.     PERSONAL JURISDICTION

### a.  Legal Standard

When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion is based on written materials rather than an evidentiary hearing, as here, the Court must determine "whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (internal quotation marks omitted). Plaintiffs "cannot simply rest on the bare allegations of [their] complaint," but "uncontroverted allegations in the complaint must be taken as true." *Id.* (internal quotation marks and citation omitted).

### b.  Discussion

As the Court explained in its Order denying the Finn Defendants' Motion to Dismiss (Doc. 44), the applicable jurisdictional statute in a securities fraud case is § 27 of the Act rather than Arizona's long-arm statute, on which Grizzly also incorrectly relied. Section 27 provides for nationwide service of process, meaning that "so long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). Here, Grizzly is an LLC organized in Delaware (Doc. 1 ¶ 9), which is sufficient to constitute minimum contacts with the United States such that the Court can exercise personal jurisdiction. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Moreover, because the state-law claims are based on the same common nucleus of operative facts as the securities fraud claim, the Court will exercise pendent personal jurisdiction over the state-law claims against Grizzly. *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Accordingly, Grizzly will not be dismissed for lack of personal jurisdiction, and Plaintiffs' Motion to Conduct Jurisdictional Discovery (Doc.

29) will be denied as moot.

## III.   RULE 12(b)(6)

### a.  Legal Standard

Generally, to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

### b.  Discussion

Grizzly argues that Plaintiffs have failed to state a claim for securities fraud or tortious interference.[3] The Court will address the claims in turn.

#### i.  Securities Fraud

To state a claim for securities fraud pursuant to § 10(b) of the Act and Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. 240.10b-5,[4] a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011)). "Securities

---

[3] Grizzly does not argue that Plaintiffs have failed to state a defamation claim.

[4] As the Court found in its Order denying the Finn Defendants' Motion to Dismiss (Doc. 44), the Court has subject matter jurisdiction over Plaintiffs' securities fraud claim only pursuant to § 10(b) of the Act and Rule 10b-5.

fraud claims must satisfy the exacting standards of [FRCP] 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *Id.* at 1205 (internal quotation marks omitted). FRCP 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." That standard applies to all elements of a securities fraud claim. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). The PSLRA also sets forth heightened requirements specific to the first and second elements. *See* 15 U.S.C. § 78u-4(b). Grizzly argues that Plaintiff has failed to adequately plead the second, third, and sixth elements.[5] (Doc 21 at 3–4).

Scienter. To adequately allege scienter, "a complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (internal quotation marks omitted). That standard is "more than *mere* recklessness or a motive to commit fraud," but rather "an *extreme* departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Id.* (internal quotation marks omitted). Additionally, in a securities fraud action, the PSLRA requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Thus, a securities fraud claim withstands a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Nguyen*, 962 F.3d at 414.

Plaintiffs argue that they have adequately pled scienter through their allegation

---

[5] In its Reply, Grizzly argues that Plaintiffs also failed to plead the first element, but because that argument was not raised in the Motion, it was waived. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."). Although the Motion stated that "the allegations regarding Grizzly's representations do not meet the definition of misrepresentations," the Motion provided no substantive argument on that element; the balance of that paragraph made arguments related to the third element. (Doc. 21 at 4).

that "Fin Capital and Grizzly acted intentionally to drive down the stock price of Alpine 4 in manipulative fashion." (Doc. 1 ¶ 74). This is plainly a conclusory statement that falls well short of "stat[ing] with particularity facts giving rise to a strong inference" of the requisite scienter as mandated by the PSLRA. 15 U.S.C. § 78u-4(b)(2)(A) . Reviewing the rest of the Complaint, the Court finds that Plaintiffs have not met the high pleading standard for this element. While Plaintiffs have noted a variety of statements Grizzly made that they allege are false or misleading, they have not alleged facts to support a strong inference—at least as compelling as any other inference—that Grizzly made such statements intentionally or with deliberate recklessness. Plaintiffs argue that a disclaimer on Grizzly's website demonstrates intent, but that disclaimer is not alleged in the Complaint. (Doc. 30 at 6). Thus, the Court cannot consider it and draws no conclusion on whether it would satisfy this element. Plaintiffs have failed to adequately plead scienter.

Connection to purchase or sale of a security. For this element, the Plaintiff must allege "some causal connection between the fraud and the securities transaction in question." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999); *see also Stoyas v. Toshiba Corp.*, 896 F.3d 933, 951 (9th Cir. 2018) ("[F]or fraud to be 'in connection with the purchase or sale of any security' it must 'touch' the sale— i.e., it must be done to induce the purchase at issue."). To sufficiently plead such a connection, a plaintiff must "clearly set[ ] forth the transactions." *Stoyas*, 896 F.3d at 951 (finding a complaint did not satisfy this element because it did not include basic factual details about the transactions).

Here, Plaintiffs argue that their allegation that Grizzly issued its report "in an effort to increase short selling interest or for their own profit" is sufficient to meet the pleading standard because it shows that Grizzly participated in a transaction. (Doc. 1 ¶ 73). But the Complaint contains no other facts about any purchase or sale by Grizzly. Moreover, elsewhere in the Complaint, Plaintiffs allege that "Grizzly *either* invested in, motivated other investors to invest in, and/or set off an intentional frenzy of short selling Alpine 4 stock to put downward pressure on the market," showing that Grizzly was not

necessarily a participant in a transaction. (Doc. 1 ¶ 69).

But even if Grizzly did participate in a transaction alleged in sufficient detail, it would not satisfy this element. The Supreme Court has interpreted § 10(b) and Rule 10b-5's prohibition of deceptive practices "in connection with the purchase or sale of any security" to "limit relief . . . to *plaintiffs* who had either purchased or sold securities." *Cohen v. Stratosphere Corp.*, 115 F.3d 695, 700 (9th Cir. 1997) (emphasis added) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)). *Defendant's* purchase or sale of securities does not give rise to a securities fraud claim under those provisions. Instead, to state a claim, Plaintiffs would have to allege the details of *their* purchases or sales of securities—in addition to showing the requisite causal connection between those transactions and the alleged fraud by Grizzly. Because they have not done so in the Complaint, Plaintiffs have failed to plead this element.

Loss causation. To satisfy loss causation, "the plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event." *Lloyd*, 811 F.3d at 1209. Plaintiffs allege that Alpine 4's stock price peaked at $8.51 on February 10, 2021, then fell to $5.83 on March 2; $4.89 on March 3; $4.25 on March 4; and $3.95 on March 5. (Doc. 1 ¶ 35). Grizzly published its report about Alpine 4 on March 10, 2021—five days after Alpine 4's stock price had *already* fallen below $4. (Doc. 1 ¶ 41). Before Grizzly took any of the actions alleged in this case, Alpine 4's stock had lost more than half of its value in less than a month. The price fell almost $2, or 32%, in a span of just three days the week *before* Grizzly published its report. Plaintiffs' own allegations show that Alpine 4's stock price actually stabilized after the Grizzly report, plateauing between $3 and $4 after the month-long decline that preceded the report. (Doc. 1 ¶ 35). Faced with those facts, it is impossible for the Court to plausibly infer that Grizzly's actions caused Plaintiffs' economic loss. Thus, Plaintiff has not met the FRCP 8 pleading standard with respect to this element, much less the FRCP 9(b) standard that applies to this claim. Plaintiffs' securities fraud claim will be dismissed for failure to state a claim.

ii. *Tortious Interference*

To state a claim for tortious interference, a plaintiff must allege facts showing:

> (1) the existence of valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cnty., Inc.*, 637 P.2d 733, 740 (Ariz. 1981). The interference must "be *both* intentional and improper." *Safeway Ins. Co., Inc. v. Guerrero*, 106 P.3d 1020, 1026 (Ariz. 2005). "While the 'intentional' element of tortious interference focuses on the mental state of the actor, the 'improper' element in contrast generally is determined by weighing the social importance of the interest the defendant seeks to advance against the interest invaded." *Id.* (internal quotation marks and citations omitted). Grizzly argues that Plaintiffs fail to meet any of the elements of tortious interference.

Plaintiffs allege that they "had and have a valid business expectancy that their stock in Alpine 4 will only be subject to normal, marketplace, and general business risks or investment" and that Grizzly intentionally interfered with that expectancy by making false statements. (Doc. 1 ¶¶ 81–84). A business expectancy, however, is "a prospective business relation with another." *Dube v. C. Desai, Inc.*, No. 2 CA-CV 2007-0142, 2008 WL 4638924, at *1 (Ariz. Ct. App. Apr. 4, 2008). Plaintiffs' expectation of their stock being subject only to normal market forces, then, is not a business expectancy.[6] Still, as

---

[6] Plaintiffs also allege that "Plaintiffs had a valid business expectancy that they would be able to sell their shares of [Alpine 4] stock at a higher rate or would be able to realize an increased market rate." (Doc. 1 ¶ 86). But a plaintiff has a claim for tortious interference with a business expectancy only where "the plaintiff can identify the specific relationship with which the defendant interfered." *Dube v. Likins*, 167 P.3d 93, 101 (Ariz. Ct. App. June 28, 2007). In other words, there must be "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* (internal quotation marks omitted). "Even when the business expectancy is with a group, . . . [courts] have required that the group be specifically identifiable." *Id.* Thus, Plaintiffs' general expectation of the ability to sell their shares at a higher price does not constitute a valid business expectancy for the purposes of this tort.

Plaintiffs correctly note in their response, the relationship between a corporation and its shareholders is contractual, satisfying the first element. *See Miller v. Salt River Valley Water Users' Ass'n*, 463 P.2d 840, 844 (Ariz. Ct. App. 1970). Moreover, it is certainly a plausible inference that Grizzly—which published an investment report about Alpine 4— knew that Alpine 4 had such relationships with shareholders.

Still, Plaintiffs do not allege that any shareholder Plaintiff breached or terminated their contractual relationship with Alpine 4, nor that Alpine 4 breached or terminated its contractual relationship with any of the shareholder Plaintiffs. They also have not alleged, then, that Grizzly *caused* such a breach or termination. In fact, Plaintiffs allege that the shareholder Plaintiffs "are"—present tense—shareholders of Alpine 4. (Doc. 1 ¶ 14). Thus, Plaintiffs have not pled the third element.

Further, Plaintiffs have not adequately pled resultant damages for the same reason that they have not pled loss causation: Plaintiffs' losses had, for the most part, already occurred before Grizzly published its report, and the Court cannot plausibly infer that any losses that occurred after the publication were a result of Grizzly's actions. Finally, Plaintiffs allege that Grizzly's conduct was improper because it violated federal securities laws. (Doc. 1 ¶ 87). Because Plaintiffs have not stated a claim for securities fraud, they have not adequately pled the impropriety element. Plaintiffs' claim for tortious interference will therefore be dismissed.

## IV. CONCLUSION

Subject matter jurisdiction in this case is predicated on the federal question raised in the securities fraud claim. (Doc. 44 at 3 & n.2) Because that claim—along with the tortious interference claim—will be dismissed for failure to state a claim, the Court declines to exercise supplemental jurisdiction over the state-law defamation claim. *See* 28 U.S.C. § 1367(c)(3). Thus, all of the claims against Grizzly will be dismissed.

Still, leave to amend a deficient complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). When dismissing for failure to state a claim, "a district court should grant leave to amend . . . unless it determines that the pleading could not

possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks omitted). Here, it may be possible for Plaintiffs to cure the deficiencies outlined in this Order, so the Court will grant leave to amend. Accordingly,

**IT IS ORDERED:**

1.  That Defendant Grizzly Research LLC's Motion to Dismiss (Doc. 21) is **granted**;

2.  That the claims against Grizzly are **dismissed without prejudice**;

3.  That Plaintiffs may file an Amended Complaint no later than **May 12, 2022**;

4.  That if Plaintiffs do not file an Amended Complaint, the Clerk of Court must terminate Defendant Grizzly Research LLC as a party to this action;

5.  That Plaintiffs' Motion to Conduct Jurisdictional Discovery (Doc. 29) is **denied as moot**.

Dated this 21st day of April, 2022.

Honorable Steven P. Logan
United States District Judge