**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alpine 4 Holdings Incorporated, et al., | No. CV-21-01494-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Finn Management GP LLC, et al., | |
| Defendants. | |

Before the Court are Defendant Grizzly Research LLC's Motion to Dismiss (Docs. 58 & 59) and Defendants Finn Management GP LLC and Fin Capital Management LLC's Motion to Dismiss (Doc. 60). For the following reasons, the Motions will be granted.[1]

**I. BACKGROUND**

Alpine 4 Holdings, Inc. ("Alpine 4") is a Delaware corporation headquartered and doing business in Arizona. (Doc. 52 at 1). It is a holding company for several subsidiary businesses and is a publicly traded corporation. (Doc. 52 at 2–3). On August 31, 2021, Alpine 4 and four of its shareholders (collectively "Plaintiffs") filed a Complaint alleging securities fraud, tortious interference with prospective business expectancy, and defamation against Defendants Finn Management GP LLC and Fin Capital Management

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998).

LLC (collectively the "Finn Defendants") and Defendant Grizzly Research, LLC ("Grizzly"). (Doc. 1). On April 21, 2022, the Court denied the Finn Defendants' Motion to Dismiss pursuant to Rule 12(b)(1), (2), and (3), finding that the Court had subject matter jurisdiction and personal jurisdiction and that venue was proper. (Doc. 44). The same day, however, the Court granted Grizzly's Motion to Dismiss pursuant to Rule 12(b)(2) and (6), finding that the Court had personal jurisdiction but that Plaintiffs had failed to state a securities fraud or tortious interference claim. (Doc. 45). The Court declined to exercise supplemental jurisdiction over the defamation claim and dismissed the claims against Grizzly with leave to amend. (Doc. 45).

On May 12, 2022, Plaintiffs filed a First Amended Complaint ("FAC") alleging securities fraud, tortious interference with contract/prospective business expectancy, and defamation against the Finn Defendants and Grizzly. (Doc. 52). Plaintiffs allege that each Defendant made false statements about Alpine 4 and "directly or indirectly invested in, motivated other investors to invest in, and set off an intentional frenzy of short selling Alpine 4 stock to put downward pressure on the market price."[2] (Doc. 52 at 18). The Finn Defendants and Grizzly have no apparent direct relationship to each other, and the facts underlying Plaintiffs' claims against the parties are distinct.

As to the Finn Defendants, Plaintiffs allege that they conduct business collectively as "Fin Capital." (Doc. 52 at 2). On March 4 and 10, 2021, the Fin Capital Twitter account posted statements about Alpine 4, including that it has "no substantive businesses," is "run by a couple of yokels with no experience," and is comparable to the business depicted as a fraud in the movie *Wolf of Wall Street*. (Doc. 52 at 4, 17). Plaintiffs allege that these Tweets were false and meant to encourage readers to short-sell Alpine 4's stock. (Doc. 52 at 4, 6).

As to Grizzly, on March 10, 2021, it published a report and short video about

---

[2] "Short selling" is a strategy "in which the investor sells stock that the investor does not own, speculating that the stock price will fall, so that when the investor has to make good on the stock that the investor never owned, it can be purchased at a lower price if the stock price goes down." (Doc. 52 at 6).

2

Alpine 4 on its website, including a variety of statements that Alpine 4 alleges were false. (Doc. 52 at 6–16). The allegedly false statements included, among others, that "1) Alpine 4 acquisition Impossible Aerospace was defunct when Alpine 4 bought it in 2020; 2) Alpine 4 acquisition, Vayu Inc. was a non-operating and non-innovating drone developer with almost no active business; and 3) Alpine 4 is an investment scam." (Doc. 52 at 6). A disclaimer on Grizzly's website and each page of the report disclosed that Grizzly had short positions in Alpine 4 stock and stood to profit if the stock price declined (Doc. 52 at 16–17).

In their respective pending Motions to Dismiss, the Finn Defendants and Grizzly assert that the FAC fails to state a claim upon which relief can be granted. The Court now considers those arguments.

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief."[3] *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

///

///

///

---

[3] The Finn Defendants request that the Court take judicial notice of and/or incorporate by reference certain documents outside the FAC. (Doc. 60 at 8–10). Because the FAC fails to state a securities fraud claim on its face, the Court need not do so.

## III. DISCUSSION

### a. SECURITIES FRAUD

The FAC is not entirely clear as to its theory of securities fraud, so the Court will consider whether it states a claim based on either a misrepresentation theory or a market manipulation theory.

#### i. Misrepresentation

To state a claim for securities fraud based on misrepresentations pursuant to § 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b), and Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. 240.10b-5, a plaintiff must allege: "(1) a material misrepresentation . . . by the defendant; (2) scienter; (3) a connection between the misrepresentation . . . and the purchase or sale of a security; (4) reliance upon the misrepresentation . . . ; (5) economic loss; and (6) loss causation." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011)). "Securities fraud claims must satisfy the exacting standards of [FRCP] 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *Id.* at 1205 (internal quotation marks omitted). FRCP 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." That standard applies to all elements of a securities fraud claim. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). The PSLRA also sets forth heightened requirements specific to the first and second elements. *See* 15 U.S.C. § 78u-4(b). Grizzly argues that Plaintiffs have failed to plead any of the elements in their claim against it; the Finn Defendants argue that Plaintiffs have failed to plead all but the first element in their claim against them.

The Court need not address all of the elements as Plaintiffs' ability to state a claim is foreclosed by the fact that they have not engaged in a purchase or sale of Alpine 4 stock touched by Defendants' alleged misrepresentations given that they purchased their shares prior to any of the alleged fraud and remain holders of those shares. (Doc 52 at 2–3; Doc. 65 at 7); *see Stoyas v. Toshiba Corp.*, 896 F.3d 933, 951 (9th Cir. 2018) ("[F]or

fraud to be 'in connection with the purchase or sale of any security' it must 'touch' the sale—i.e., it must be done to induce the purchase at issue."). This deficiency was highlighted in the Court's previous Order granting Grizzly's first Motion to Dismiss:

> The Supreme Court has interpreted § 10(b) and Rule 10b-5's prohibition of deceptive practices "in connection with the purchase or sale of any security" to "limit relief . . . to *plaintiffs* who had either purchased or sold securities." *Cohen v. Stratosphere Corp.*, 115 F.3d 695, 700 (9th Cir. 1997) (emphasis added) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)). . . . [T]o state a claim, Plaintiffs would have to allege the details of *their* purchases or sales of securities—in addition to showing the requisite causal connection between those transactions and the alleged fraud . . . .

(Doc. 45 at 7). Plaintiffs have, again, failed to "clearly set[ ] forth" any information about their transactions, instead broadly alleging that they are "shareholders and/or holders of debt/equity instruments . . . of Alpine 4." (Doc. 52 at 2). As the Court made clear in its previous Order, such a broad allegation is insufficient. *See Stoyas*, 896 F.3d at 951 (finding a complaint did not satisfy the third element because it did not include basic factual details about the transactions).

Plaintiffs argue that merely pleading their status as shareholders at the time of Defendants' alleged fraud is sufficient to satisfy the third element of a securities fraud claim. (Doc. 65 at 7; Doc. 64 at 9). They argue, "Though this may seem backwards in the law, it is a mirror image of investors who are jilted and defrauded by being induced to buy and wind up with a pig in a poke." (Doc. 64 at 9). The problem is that Plaintiffs do not cite and the Court does not find any actual law to support the proposition that simply holding stock satisfies the statutory requirement that the fraudulent practice be done "*in connection with* the purchase or sale of any security." 15 U.S.C. § 78j(b) (emphasis added). That element requires "some causal connection between the fraud and the securities transaction in question." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999). There is no plausible causal connection between

Plaintiffs' purchase of securities and Defendants' subsequent alleged misrepresentations.

Plaintiffs also argue that they do no need to show reliance on the alleged misrepresentations because reliance is presumed in a fraud-on-the-market case. (Doc. 64 at 8–9; Doc. 65 at 6–8). In order to invoke that presumption, however, a plaintiff must allege: "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278 (2014). The rationale behind the fourth factor is that "if the plaintiff did not buy or sell the stock after the misrepresentation was made but before the truth was revealed, then he could not be said to have acted in reliance on a fraud-tainted price." *Id.* Plaintiffs bought their stock prior to any alleged fraud, and more generally, it is clear that they did not buy or sell shares in reliance on a fraud-tainted price. Plaintiffs therefore cannot satisfy the reliance element.

Finally, given that Plaintiffs became shareholders prior to any alleged fraud and remain shareholders, they cannot show any economic loss caused by Defendants' alleged misrepresentations. A plaintiff properly pleads the fifth element of a securities fraud claim by alleging with particularity "actual economic loss." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013) (internal quotation marks omitted); *see also Crago v. Charles Schwab & Co., Inc.* No. 16-cv-03938-RS, 2017 WL 2540577, at *6 (N.D. Cal. June 12, 2017) ("Plaintiffs fail to plead actual losses with particularity because they do not indicate any trades on which they actually experienced losses . . . ."). Moreover, the loss causation element requires a plaintiff to "demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event." *Lloyd*, 811 F.3d at 1209.

Here, Plaintiffs have not alleged with particularity any *actual* losses, much less any actual losses plausibly caused by Defendants' alleged misrepresentations. Plaintiffs do not allege the prices at which they bought their Alpine 4 shares, so it is possible that they have not experienced any losses at all based on their transactions. But even if they

have, there is no basis to believe that any such loss was caused by Defendants' statements for the same reasons outlined by the Court in its Order granting Grizzly's first Motion to Dismiss. (Doc. 45 at 7). Plaintiffs again allege that Alpine 4's stock price peaked at $8.51 on February 10, 2021, then fell to $5.83 on March 2; $4.89 on March 3; $4.25 on March 4; and $3.95 on March 5. (Doc. 52 at 5). And again, Plaintiffs' own allegations show that Alpine 4's stock price actually stabilized after the Grizzly report and the Finn Defendants' Twitter posts, plateauing between $3 and $4 after the month-long decline that preceded them. (Doc. 52 at 5). Although Plaintiffs argue that the pre-publication losses were caused by Defendants' short-selling of Alpine 4 stocks as part of their "short-and-distort" scheme, the question in a securities fraud case is whether the *misrepresentations* caused an economic loss. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 1633 (2005) (stating that the Act allows private securities fraud actions "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause"). Here, Plaintiffs have failed to make any plausible allegation that Defendants' misrepresentations led to a decline in the value of their stock, much less any actual economic loss. For those and the other reasons set forth above, the FAC fails to state a claim for securities fraud based on misrepresentations.

### ii.  Market Manipulation

The elements of a § 10(b) market manipulation claim are largely the same as the elements of a misrepresentation claim: "(1) use or employment of any manipulative or deceptive device or contrivance; (2) scienter, *i.e.* wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to as transaction causation; (5) economic loss; and (6) loss causation."[4] *Desai v. Deutsche Bank Sec. Ltd.*,

---

[4] Plaintiffs and the Finn Defendants refer to a separate four-element test used in the Seventh Circuit for § 9(a)(2) manipulation claims. *See U.S. Commodity Futures Trading Comm'n v. Kraft Goods Grp., Inc.*, 195 F. Supp. 3d 996, 1005–06 (N.D. Ill. 2016) (citing *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 764–65 (7th Cir. 2015)). District courts in the Ninth Circuit, however, have stated that "[i]t is well settled that manipulative activities expressly prohibited by § 9(a)(2) of the

573 F.3d 931, 939 (9th Cir. 2009) (internal quotation marks omitted). "A claim for market manipulation is subject to Rule 9(b)'s heightened pleading standards, but, because it 'can involve facts solely within the defendant's knowledge[,] at the early stages of litigation, the plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim.'" *In re Bank of Am. Corp.*, No. 09-md-02014 JSW, 2011 WL 740902, at \*6 (N.D. Cal. Feb. 24, 2011) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007)). "All securities fraud complaints . . . , however, are subject to the more exacting pleading requirements of the PSLRA . . . ." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009).

As Defendants highlight, "[m]anipulation . . . is virtually a term of art when used in connection with securities markets." *Desai*, 573 F.3d at 938–39 (quoting *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977)). It "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Id.* at 939 (quoting *Santa Fe Indus., Inc.*, 430 U.S. at 476). Courts recognize that "short selling—even in high volumes—is not, by itself, manipulative." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). "To be actionable as a manipulative act, short selling must be willfully combined with something more to create a false impression of how market participants value a security." *Id.*

Plaintiffs respond not that they have alleged the requisite "something more," but rather that they have "been blocked at attempts to engage in early discovery," (Doc. 65 at 11), and that according to Elon Musk's Twitter account, short-selling is a scam. (Doc. 64 at 11). Obviously, Mr. Musk's Tweets are not law and have no persuasive effect on this Court. And as to Plaintiffs' inability to conduct discovery, "[t]he purpose of [FRCP]

---

Exchange Act are also violations of § 10(b) of the [Act]." *Sec. Exch. Comm'n v. Allison*, No. 81-435-BE, 1982 WL 1560, at \*7 n.7 (D. Or. Jan. 17, 1982); *see Sec. Exch. Comm'n v. Ficeto*, 839 F. Supp. 2d 1101, 1110 & n.8 (C.D. Cal. 2011), *abrogated on other grounds by Stoyas v. Toshiba Corp.*, 896 F.3d 933, 947 (9th Cir. 2018); *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 463, 476–77 (1977). Thus, the Court need not consider a market manipulation claim under § 9(a)(2) of the Act as distinct from a market manipulation claim under § 10(b) given that the latter encompasses the former.

12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). "[I]f the allegations of the complaint fail to establish the requisite elements of the cause of action, . . . requiring costly and time consuming discovery and trial work would represent an abdication of . . . judicial responsibility." *Id.* The Court cannot allow Plaintiffs to conduct a fishing expedition for evidence of a claim that they have failed to plausibly state.

More importantly, though, even if Plaintiffs had properly alleged the use of manipulative practices, they cannot plead several of the other elements for the same reason they could not state a securities fraud claim based on misrepresentations: they have not engaged in a purchase or sale of Alpine 4 stock touched by Defendants' alleged practices. "[A] complaint alleging a violation of § 10(b) is required to state that the transactions that caused the loss were made in ignorance of the fact that the price was affected by the alleged manipulation." *ScripsAmerica, Inc. v. Ironridge Glob.*, 119 F. Supp. 3d 1213, 1249 (C.D. Cal. 2015). But here, as explained previously, Plaintiffs have failed to allege any connection between their transactions and the alleged manipulation, as well as any economic loss caused by such manipulation. Thus, the FAC fails to state a claim for securities fraud based on market manipulation.

### b. STATE-LAW CLAIMS

Subject matter jurisdiction in this case is predicated on the federal question raised in the securities fraud claim. (Doc. 52 at 2). Because that claim will be dismissed for failure to state a claim, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3). Thus, the FAC will be dismissed in its entirety.

## IV. CONCLUSION

Leave to amend a deficient complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied, however, where amendment would be futile. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

9

Here, the Court finds that amendment would be futile as the Court previously gave Plaintiffs an opportunity to amend, and the FAC contains the same deficiencies as the original Complaint. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) ("[A] district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." (internal quotation marks omitted)). Because Plaintiffs have not engaged in a purchase or sale of securities connected to Defendants' conduct, they cannot state a claim for securities fraud. Accordingly,

**IT IS ORDERED** that Defendant Grizzly Research LLC's Motion to Dismiss (Docs. 58 & 59) and Defendants Finn Management GP LLC and Fin Capital Management LLC's Motion to Dismiss (Doc. 60) are **granted**.

**IT IS FURTHER ORDERED** that Plaintiffs' first claim for relief, securities fraud, is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs' second and third claims for relief, tortious interference and defamation, are **dismissed without prejudice** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly in favor of Defendants and **terminate** this action.

Dated this 22nd day of August, 2022.

Honorable Steven P. Logan
United States District Judge